UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEATHER L. PIKE                             Case No. 18-11262

              Plaintiff,           Stephen J. Murphy, III
     v.                         United States District Judge

COMMISSIONER OF SOCIAL              Stephanie Dawkins Davis
SECURITY,                           United States Magistrate Judge

             Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 12, 13)**

## I.  PROCEDURAL HISTORY

### A.  Proceedings in this Court

On April 22, 2018, plaintiff Heather L. Pike filed the instant suit.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Stephen J. Murphy, III referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying Pike disability

benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary

judgment.  (Dkts. 12, 13).

### B.  Administrative Proceedings

On November 5, 2015, Pike filed an application for period of disability and

disability insurance benefits, along with an application for supplemental security

income alleging disability beginning on September 28, 2015.  (Tr. 18).[1]  Pike's

claims were initially denied on April 5, 2016.  (Tr. 18).  She requested a hearing

and appeared on June 6, 2017 before Administrative Law Judge ("ALJ") Mary S.

Connolly.  (Tr. 35-50).  In a decision dated September 11, 2017, the ALJ found

that Pike was not disabled.  (Tr. 15-30).  Pike requested a review of this decision

and the ALJ's decision became the final decision of the Commissioner when the

Appeals Council, on March 20, 2018, denied her request for review.  (Tr. 1-7);

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that the

Court **DENY** plaintiff's motion for summary judgment, **GRANT** defendant's

motion for summary judgment, and **AFFIRM** the findings of the Commissioner.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Pike was born in 1976 and was 39 years old on the disability onset date.  (Tr.

28).  She has a high school education and past relevant work as a cashier and a

medical assistant.  (Tr. 28).  Pike lives with her mother and stopped working in

September 2015 because of her vertigo, anxiety, depression, post-traumatic stress

disorder, and acid reflux .  (Tr. 39, 216).

---

[1] The Administrative Record appears on the docket at entry number 9.  All references to
the same are identified as "Tr."

The ALJ applied the five-step disability analysis to Pike's claims and found at step one that she did not engage in any substantial gainful activity since the alleged onset date.  (Tr. 20).  At step two, the ALJ found that Pike had the following severe impairments: vertigo, headaches, and affective disorder.  *Id*.  At step three, the ALJ found that Pike did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations.  (Tr. 21-22).  The ALJ determined that Pike has the residual functional capacity (RFC) to perform the full range of unskilled sedentary work.  (Tr. 22).  At step four, the ALJ determined that Pike could not perform any past relevant work.  (Tr. 28).  At step five, the ALJ concluded that based on an RFC for the full range of unskilled sedentary work, considering Pike's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 201.28 and therefore, she was not under a disability from the alleged onset date through the date of the decision.  (Tr. 28).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If a claimant does not obtain relief during the 7 administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant

when making a determination of disability."); *Walters*, 127 F.3d at 531

("Discounting credibility to a certain degree is appropriate where an ALJ finds

contradictions among medical reports, claimant's testimony, and other evidence.").

"However, the ALJ is not free to make credibility determinations based solely

upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*,

486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq.*).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty-stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the

plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe

impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a

Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to

perform past relevant work, whether there is work in the national economy that the plaintiff can perform. *Id*. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.     Analysis and Conclusions

1.     Step Five

Pike first argues that the ALJ erred as a matter of law by finding that she could perform a full range of sedentary work, without identifying any specific jobs or relying on vocational expert testimony.  According to Pike, the Commissioner failed to meet her step five burden because the vocational expert did not identify a significant number of jobs that she can perform.  Pike's argument suggests, but does not develop support for, the notion that there is insufficient evidence for the conclusion that someone with the limitations identified by her physician could perform a significant number of jobs in the economy.

In response, the Commissioner contends that the ALJ properly relied on the Grids and was not required to obtain or rely on vocational expert testimony to reach her conclusion that Pike could perform a substantial number of jobs in the economy.  The undersigned agrees with the Commissioner.  The ALJ found that Pike had only exertional physical limitations and that she was limited to unskilled work as far as any mental limitations.  (Tr. 22). Accordingly, the ALJ properly relied on Grid Rule 201.28 to find that Pike was not disabled.  (Tr. 28); 20 C.F.R. Part 404, Subpt P, Appx. 2, § 201.28 (providing that an individual aged 18-44, with at least a high school education, whose previous work experience is unskilled, and who is limited to sedentary work is not disabled); *Morris v. Comm'r of Soc.*

9

*Sec.*, 2017 WL 2191668, at *6 (W.D. Tenn. May 18, 2017) ("The limitation to

unskilled work had no effect on Plaintiff's ability to perform the full range of

sedentary work because all jobs under the grids are unskilled.").  The Grids take

administrative notice of the existence of "[a]pproximately 200 separate unskilled

sedentary occupations, . . . each representing numerous jobs in the national

economy," 20 C.F.R. Part 404, Subpt P, Appx 2, § 201.00(a); *Lobdell v. Comm'r*

*of Soc. Sec.*, 2015 WL 3441161, at *14 (E.D. Mich. May 28, 2015) ("[T]he ALJ

properly noted [that] the Social Security rules take administrative notice that 'there

are approximately 200 separate unskilled sedentary occupations, each representing

numerous jobs, in the national economy.'").  The Commissioner correctly points

out that the ALJ was not required to rely on any additional evidence, such as

vocational expert testimony, to find that Pike was not disabled.  *See Gaffney v.*

*Bowen*, 825 F.2d 98, 102 (6th Cir. 1987) ("The ALJ found that appellant could

perform a full range of sedentary work and therefore was not in error when he

applied the grid."); *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 922

(6th Cir. 1987) ("Since the appellant's characteristics fit the grid pattern, expert

testimony was unnecessary to show a significant number of jobs in the economy,

as the grids take the availability of jobs into account.").

　　　As set forth above, Pike briefly attempts to undermine the ALJ's RFC, but

does not fully explore or support this argument.  Accordingly, any argument in this

regard is waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)

("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at

developed argumentation, are deemed waived. It is not sufficient for a party to

mention a possible argument in the most skeletal way, leaving the court to . . . put

flesh on its bones.").

        2.     Treating physician opinion

Pike argues that the ALJ failed to give controlling or other appropriate

weight to her treating physician's opinions.  Pike's primary care treating physician,

Dr. Richter, who has treated her since 2007, notes that she "consistently exhibited

signs (and complaints) of vertigo in the past two years."  (Tr. 397).  Dr. Richter

opines she cannot work due to recurrent and significant vertigo episodes.  (Tr. 393-

394).  He also indicates that she has fatigue and that "her ongoing vertigo is

complicated by her psychological condition."  (Tr. 394).  Dr. Richter completed a

"Dizziness Residual Capacity Questionnaire" dated June 22, 2016, which states

that Pike suffers from chronic vertigo and chronic rhinosinusitis, fatigue, and

sleepiness.  (Tr. 402-403).  He opines that her "medical concerns and absences

from work make her incapable of work."  (Tr. 404).  Dr. Richter referred Pike to

the specialty clinic at the University of Michigan where she underwent testing, the

results of which she contends support Dr. Richter's opinions.  Her audiogram

revealed non-specific vertigo that is likely due to vestibular migraine and

contralateral abnormalities on the acoustic reflex pattern.  (Tr. 320).  MRI testing reflected possible dehiscence (splitting or bursting) of the right superior semicircular canal (Tr. 365) and CT scanning and electrocochleography reflects test results as positive consistent with right-sided superior semicircular canal dehiscence and vertigo.  (Tr. 361).

According to Pike, the ALJ does not provide sufficiently specific or good reasons for discrediting the opinion of Dr. Richter.  While the ALJ acknowledged that Dr. Richter was Pike's primary treating source (Tr. 25-26), she argues that the decision does not indicate that the ALJ considered the requisite factors. She says the ALJ concluded that Dr. Richter's opinion was not consistent with other evidence in the record, that his limitations were overly restrictive, and that he sympathizes with Pike.  But, according to Pike, the ALJ does not appear to have considered the length of the treatment relationship, frequency of examination, the nature and extent of the treatment relationship, or the level of specialization, with respect to Dr. Richter.  Accordingly, Pike maintains that the Court cannot conclude that the ALJ met her obligation to "explicitly consider" such factors in deciding "to override the opinion of a treating physician."  Pike focuses on the length of the treatment relationship, which the ALJ did not account for in weighing Dr. Richter's opinion.  Dr. Richter observed Pike, with varying degrees of frequency, during the progressive worsening of her conditions.  She points out that a treating source's

medical opinion is accorded "more weight" the longer he or she has treated a claimant and the more times the claimant has been seen by a treating source. 20 C.F.R. § 404.1527(c)(2)(i). According to Pike, it is impossible to tell from the ALJ's decision whether the tenure of the treatment relationship was considered in weighing Dr. Richter's opinion.

In response, the Commissioner argues that Pike has not identified any error in the ALJ's assessment of Dr. Richter's opinions. The Commissioner contends that the ALJ correctly pointed out that Dr. Richter's statement that Pike was incapable of performing a full-time job was "not a medical opinion but a dispositive administrative finding requiring familiarity with the Regulations and the legal standards set forth therein." And furthermore, it concerned an issue reserved to the Commissioner. (Tr. 26; Tr. 394); *see* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (statements that a claimant is "disabled," or "unable to work," concern an issue reserved to the Commissioner because they are dispositive of a case); *see also Cosma v. Comm'r of Soc. Sec*., 652 Fed. Appx. 310, 311 (6th Cir. 2016) ("The ALJ reasonably gave no weight to [the doctor's] opinion because her conclusion that [plaintiff] is totally disabled is a determination reserved to the Commissioner."). Next, the Commissioner asserts that the ALJ reasonably explained that ehe also discounted this statement – as well as the opinions expressed in the dizziness questionnaire – because they were not supported by Dr.

Richter's own treatment notes or other substantial evidence of record.  (Tr. 25-26).

Dr. Richter indicated in the dizziness questionnaire that Pike had, on average, four

episodes of dizziness per week, each lasting 24 hours.  (Tr. 402).  But as the ALJ

noted, the medical evidence of record does not substantiate such frequent or

persistent episodes.  (Tr. 25-26).  Rather, according to the Commissioner, the

record reflects only general reports of dizziness over a relatively short period of

time (from late September 2015 through March 2016).  (*See* Tr. 266-70, 292-381).

The Commissioner acknowledges that the ALJ's statement that the record

documented "only 2 vertigo episodes" (Tr. 25-26) – a reference to the October

2015 emergency room visit and December 2015 vertigo clinic examination (Tr. 24)

– is an undercount, he also insists that the ALJ's observation that the record did not

reflect such persistent or limiting vertigo as Dr. Richter described remains

accurate.  Pike reported persistent vertigo symptoms during all of her visits with

Dr. Richter in the fall of 2015 (Tr. 293-99) – some of which the ALJ

acknowledged (Tr. 24).  But she did not report vertigo symptoms during any of her

visits to Dr. Walford's office between December 2015 and March 2016, nor did

Dr. Walford or any of his staff make any associated objective findings.  (Tr. 312-

17, 320-60).  She also did not report any particular vertigo-related symptoms to Dr.

Richter in January or May 2016.  (Tr. 292, 413).  Moreover, on this last visit, Dr.

Richter told Pike only to maintain her current medications and to follow up as

needed; there is no record of any follow-up.  (Tr. 413).  In fact, there is no record of any treatment for headaches at any time between the May 2016 visit and the ALJ's decision, in September 2017.  The ALJ thus reasonably found that these limited treatment records, which reflected a relatively mild degree of complaints and treatment, did not substantiate the extreme limitations set forth in Dr. Richter's dizziness questionnaire.

The Commissioner acknowledges that her dizziness symptoms were substantiated by various objective tests, including the audiogram, MRI, and CT scan.  (Tr. 320, 361, 365).  The ALJ discussed the audiogram (Tr. 24), but not the imaging studies.  However, the Commissioner maintains that these additional records do not undermine the ALJ's conclusion.  The MRI and CT scan only confirm that Pike had an underlying impairment that caused her vertigo symptoms, but the ALJ already acknowledged as much by finding her vertigo and headaches severe.  (Tr. 20).  According to the Commissioner, the specific diagnosis provides no additional information about the extent or limiting effects of Pike's symptoms. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (a "mere diagnosis . . . says nothing about the severity of the condition").  Moreover, the state agency physician, Dr. Donald Kuiper, explicitly considered the MRI and audiology test results (Tr. 59), yet still concluded that Pike could perform a range of medium work (Tr. 62-64), which is significantly less restrictive than the ALJ's ultimate

assessment (sedentary work).  (Tr. 22).  The Commissioner also points out that Dr.

Richter did not cite the imaging studies when asked to explain what diagnosis or

objective evidence supported his opinions.  (Tr. 393, 397, 402).  The

Commissioner contends that the ALJ's finding that Dr. Richter's opinions were

inadequately supported remains appropriate – particularly considering that the

record reflects very little evidence of further treatment following the March 2016

diagnosis.

     The Commissioner also argues that this same rationale applies to Dr.

Richter's assessment of Pike's physical abilities.  The ALJ afforded that

assessment some weight, reasoning that her assessment of Pike's exertional

abilities – i.e., that she could lift or carry 10 pounds, stand or walk for three to four

hours per day, and sit for four to six hours per day (Tr. 397-98), was consistent

with the evidence of record.  Accordingly, the Commissioner maintains that the

ALJ's conclusion that Pike could perform sedentary work is consistent with this

assessment.  (Tr. 22); *see* Social Security Ruling ("SSR") 83-10, 1983 WL 31251,

at *5 (1983) (sedentary work involves lifting or carrying no more than 10 pounds,

standing or walking for up to two hours per day and sitting the remainder of the

time).  However, the Commissioner says that the ALJ reasonably rejected the

remainder of the limitations Dr. Richter described – i.e., the postural and positional

limitations, and her assessment of Pike's need for absences and breaks – because they were unsupported by the record.

Finally, the Commissioner asserts that Pike's contention that there is "no indication in the decision that the ALJ considered the requisite factors" when weighing Dr. Richter's opinion, is without merit. The ALJ stated elsewhere in the decision that Dr. Richter was her "primary treating source." (Tr. 25-26). Yet, degree of support, on which the ALJ's analysis is focused, is unquestionably a relevant factor. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given such deference when supported by objective medical evidence."). The ALJ also explicitly considered whether the opinions were consistent with the record, *see* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4), and found that only Dr. Richter's assessment of Pike's exertional and environmental limitations met this standard. (Tr. 26). In addition, the ALJ included a statement in her decision, following her discussion of Pike's treating psychiatrist's opinion, that she had considered all the regulatory factors when considering both that opinion and Dr. Richter's. (Tr. 26). According to the Commissioner, Pike offers no reason to second-guess the ALJ's statement. At most, she asserts that the ALJ "surmised that the doctor's limitations are over restrictive, and he sympathizes with Plaintiff." The Commissioner points out that the statement is not in the ALJ's

17

decision; and suggests Pike may be using language from a brief in another case.

Further, though Dr. Richter treated Pike since 2007 (Tr. 393), she does not explain

why this consideration warrants more weight here, when she did not begin

reporting significant vertigo symptoms until September 2015.  Therefore, the

Commissioner maintains that Pike fails to demonstrate any error in the ALJ's

treatment of Dr. Richter's opinions.

The opinion of a treating physician should be given controlling weight if it

is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic

techniques," and (2) "not inconsistent with the other substantial evidence in [the]

case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004);

20 C.F.R. § 404.1527(c)(2).  Once an ALJ has determined that a treating source

opinion is not entitled to controlling weight, the ALJ must give good reasons for

the weight accorded to the opinion.  The reasons provided must be supported by

the evidence in the case record and must be sufficiently specific to make clear to

any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight.  *Gayheart v. Comm'r of Soc. Sec*.,

710 F.3d 365, 376 (6th Cir. 2013).  The ALJ is to discuss certain factors, which

include, (1) the length of the treatment relationship and frequency of examination,

(2) the nature and extent of the treatment relationship, (3) supportability of the

opinion, (4) consistency of the opinion with the record as a whole, and (5) the

specialization of the treating source.  *Id.*; *see also Wilson,* 378 F.3d at 544; 20

C.F.R. § 404.1527(c).  Failure to analyze a treating source opinion under the two-

prong controlling weight test amounts to the failure to provide good reasons for

giving that opinion less than controlling weight.  *Gayheart* at 376-77.

In the "Medical Questionnaire" dated June 21, 2016, Dr. Richter did not

offer any specific functional limitations.  Rather, he opined that Pike could not

perform full-time work because of her vertigo, which was complicated by her

psychological issues.  (Tr. 393-394).  In the "Dizziness Residual Functional

Capacity Questionnaire" dated June 22, 2016, Dr. Richter opined that Pike needed

more supervision than an unimpaired worker, she cannot work at heights, she

cannot operate power machines, she would have to take unscheduled breaks during

the workday of unknown frequency because of her dizzy spells and would have to

rest 3-4 hours before returning to work, she was incapable of low stress jobs

because of her medical concerns and absences from work due to treatment.  He

also opined that she would be absent more than four days per month and had

limitations on standing for periods of time.  (Tr. 402-405).  In the "Medical

Assessment of Ability to do Work Related Activities (Physical) dated June 22,

2016, Dr. Richter provided additional opinions on Pike's functional limitations.

(Tr. 397-399).  Dr. Richter opined that Pike retains the physical residual functional

capacity to lift and/or carry 10 pounds, stand/walk 3-4 hours in an 8-hour workday,

sit for 4-6 hours of 8-hour workday with occasional twist, stoop (bend),

crouch/squat, climb, look up/down, turn head and hold head in static position.  Dr.

Richter also opined that Pike would need to avoid temperature extremes, wetness,

humidity, noise dust, fumes, gases or hazards that would affect her ability to work

at a regular job on a sustained basis because her symptoms are heightened by

temperature extremes, as well as humidity and loud noises.  Dr. Richter also

opined that Pike would need to take unscheduled breaks each hour for five minutes

and would likely be absent about three days per month because of her impairments

or treatment.  *Id.*

> The ALJ analyzed Dr. Richter's opinions as follows:

> > Little weight is afforded to Dr. Richter['s] above
> > opinions [the Dizziness Questionnaire] because they are
> > not supported by his office notes or other substantial
> > evidence of record, which documents only 2 vertigo
> > episodes.  In addition, Dr. Richter's opinion that the
> > claimant is "incapable of performing a full-time job" is
> > an issue reserved for the Commissioner of the Social
> > Security Administration, not examining professionals.  A
> > Statement that a claimant is "incapable of performing a
> > full-time job" is not a medical opinion but a dispositive
> > administrative finding requiring familiarity with the
> > Regulations and the legal standards set forth herein.
> > Such a decision is reserved to the Commissioner, who
> > cannot abdicate his statutory responsibility to determine
> > the ultimate issue of disability.
> > > * * *
> > Some weight is afforded to Dr. Richter's opinion with
> > respect to the claimant['s] exertional (lift/carry and
> > stand/walk) and environmental limitations because they
> > are consistent with the evidence of record.  However, Dr.

20

> Richter's opinion with respect to postural adjustments,
> breaks, and unscheduled breaks are not support[ed] by
> the evidence of record.

(Tr. 25-26).

By themselves, Dr. Richter's opinions that Pike could not even perform a

"low-stress" job or could not perform full-time work are not medical opinions to

which any particular deference is due.  *See e.g.*, *King v. Heckler*, 742 F.2d 968, 973

(6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855

(6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).  "Opinions

on some issues, such as [opinions that you are disabled or unable to work], are not

medical opinions, as described in paragraph (a)(2) of this section, but are, instead,

opinions on issues reserved to the Commissioner because they are administrative

findings that are dispositive of a case ..." 20 C.F.R. § 416.927(d).  Nonetheless,

Social Security Ruling 96-5p, provides that "opinions from any medical source on

issues reserved to the Commissioner must never be ignored.  The adjudicator is

required to evaluate all evidence in the case record that may have a bearing on the

determination or decision of disability, including opinions from medical sources

about issues reserved to the Commissioner.  If the case record contains an opinion

from a medical source on an issue reserved to the Commissioner, the adjudicator

must evaluate all the evidence in the case record to determine the extent to which

the opinion is supported by the record."  *See* SSR 96-5p; 20 C.F.R. § 416.927(d).

Here, the ALJ did not ignore this portion of Dr. Richter's opinion, but rather considered and rejected it as is her prerogative under the rules and no error results.

The ALJ did incorrectly assert that the record reflected "only 2 vertigo episodes," when Pike, in fact, reported vertigo symptoms during a number of medical visits from September through December 2015 (Tr. 354) and in 2016.  Her primary vertigo-related complaint during that time period was dizziness that was described variously as constant (Tr. 318), intermittent (Tr. 312), mild (Tr. 301) and sometimes accompanied with headache and/or nausea.  Though she reported at times that the vertigo was "getting worse," there is very little else in the record from which to gauge the severity of her symptoms.  Based on the above, the ALJ under-appraised the record concerning  Pike's episodes of vertigo in 2015 and early 2016, but the Commissioner accurately points out that the record reflects little evidence of further treatment after her March 2016 diagnosis with the specialist.  Indeed, a single visit merely documents her chronic vertigo after that date without suggesting active treatment.  (Tr. 413) (She was noted to have "persistent/recurrent vertigo" on 5/31/16).  Further, Pike did not discuss vertigo symptoms during any of her visits to Dr. Walford's office between December 2015 and March 2016 (Tr. 312-17, 320-60) and she did not report any particular vertigo-related symptoms to Dr. Richter when she saw him in January or May 2016.  (Tr. 292, 413).  At the May visit, which was recorded as a visit for Pike to obtain her

"disability paperwork," Dr. Richter simply told her to maintain her current medications and to follow up as needed; there is no record of any follow-up.  (Tr. 413).

The core reason the ALJ offered for rejecting much of Dr. Richter's opinions was that the limitations he set forth were not supported by his records and other substantial evidence in the record.  This seems to be borne out by the record as recounted above.  In fairness, the ALJ's factual error regarding the frequency of Pike's vertigo symptoms is noteworthy since it relates to the frequency of her complaints in 2015 and early 2016.  But, even considering the larger number of doctor's visits for vertigo during that timeframe, nothing in the record suggests that Pike's complaints meet the durational requirement or the severity of her vertigo as reflected in the limitations that Dr. Richter advances.  Indeed, the record does not show persistent episodes of vertigo after March 2016, and beyond diagnostic testing, the medical records do not document anything other than mild treatment for her symptoms.  These facts significantly undermine Dr. Richter's opinions and suggest there is no reason to disturb the ALJ's conclusions in that regard.

The undersigned also finds that the ALJ's failure to discuss some of the objective testing did not result in error.  As the Commissioner points out, these test results merely further confirm that Pike has a severe impairment of vertigo, which the ALJ already found.  *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) ("The

mere fact that plaintiff suffered from a dysthymic disorder ... does not automatically entitle plaintiff to the receipt of benefits.  Rather, in order to qualify for the receipt of benefits ... plaintiff must show that she was disabled by her dysthymic disorder."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition.").  Thus, while the various diagnostic tests support Dr. Richter's diagnosis, they do not buttress his opinion as to limitations.  *See Flowers v. Comm'r of Soc. Sec.*, 2015 WL 4274961, at *4 (E.D. Mich. July 14, 2015) ("[T]he MRI . . . reports provide no insight into what additional limitations Plaintiff may suffer from based on the diagnoses therein.  Moreover, Plaintiff does not provide any such insight in his argument to the Court."); *Kamphaus v. Comm'r of Soc. Sec.*, 2015 WL 12672748, at *9 (E.D. Mich. June 22, 2015) (rejecting the contention that an MRI was material to an ALJ's decision because there was no medical evidence to show greater functional limitations based on the MRI results), rep. & rec. adopted, 2015 WL 5731839 (E.D. Mich. Sept. 30, 2015).  Moreover, the ALJ mentioned the CT and discussed the examination and testing that followed the MRI and CT.  (Tr. 24, citing cervical-vestibular evoked myogenic potential testing (VEMP), electrocochleography, electronystagmography (ENG), Videonystagmography (VNG), and audiogram).  The ALJ thoroughly discussed these tests and she concluded that her vertigo and headaches were "transient in

nature and stable with medication." (Tr. 24). This conclusion is supported by the lack of treatment for vertigo after March 2016.

Pike's complaint that the ALJ did not address all the regulatory factors in weighing Dr. Richter's opinions is without merit. Here, the ALJ expressly acknowledged that Dr. Richter was Pike's treating physician, and included a statement in her decision, following her discussion of Pike's treating psychiatrist's opinion, that she had considered all the regulatory factors when considering both that opinion and Dr. Richter's. (Tr. 26). To the extent there was any omission, such an error is harmless. As the Sixth Circuit held in *Francis v. Comm'r of Soc. Sec.,* 414 Fed. Appx. 802, 805 (6th Cir. 2011) (quoting *Friend v. Comm'r of Soc. Sec.,* 375 Fed. Appx. 543, 551 (6th Cir. 2010)), the treating physician rule is not "a procrustean bed, requiring an arbitrary conformity at all times." In *Francis*, the ALJ did not discuss several of the factors set out in 20 C.F.R. § 404.1527(d)(2), but the court held that he did not have to do an exhaustive factor-by-factor analysis. *Id.* at 804-05. If the goal of the regulation is met, i.e. providing a clear understanding of the reasons for the weight given to a treating physician's opinion, any procedural error will be harmless.

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Court **DENY** plaintiff's motion for summary judgment, **GRANT** defendant's motion for summary judgment, and **AFFIRM** the findings of the Commissioner.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 15, 2019                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge